1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**CENTRAL DISTRICT OF CALIFORNIA**

9

| | | |
|---|---|---|
| 10 | GARY J. GRAY,            ) | NO. CV 03-9255 (Mc) |

GARY J. GRAY,                    )    NO. CV 03-9255 (Mc)
                                 )
          Plaintiff,             )
                                 )    MEMORANDUM OF DECISION
          v.                     )    AND ORDER IN A SOCIAL
                                 )    SECURITY CASE
JO ANNE B. BARNHART,             )
Commissioner of the             )
Social Security Administration, )
                                 )
          Defendant.             )
_____)

     The plaintiff, GARY J. GRAY, filed the present action for review

of a final determination of the Commissioner of Social Security (the

"Commissioner") that the plaintiff is not disabled and, therefore, not

eligible for Supplemental Security Income benefits under the Social

Security Act (the "Act). For the reasons set forth below, the court

finds that the determination of the Commissioner is not based upon

substantial evidence. The matter, therefore, is remanded to the

Commissioner for further proceedings.

                            **BACKGROUND**

     The plaintiff protectively filed an application for Supplemental

Security Income benefits on May 24, 2000. [Administrative Record

("AR") 105-07; see AR 108, 119.] The Commissioner denied the

1  application initially and on reconsideration.  [AR 78-82, 89-92.]  At

2  the plaintiff's request, an administrative hearing was held before

3  Administrative Law Judge Milan Dostal (the "ALJ") on July 11, 2002.

4  [AR 38-74.]  On August 13, 2002, the ALJ filed a decision concluding

5  that the plaintiff was not under a disability as defined in the Act at

6  any time through the date of the decision.  [AR 16-23.]  The Appeals

7  Council denied the plaintiff's request for review of the ALJ's

8  decision.  [AR 5-7.]  The decision of the ALJ stands as the final

9  decision of the Commissioner.

10      Thereafter, the plaintiff filed the present action.  The

11  plaintiff and the Commissioner have consented to proceed before a

12  United States Magistrate Judge.  The parties have entered into a Joint

13  Stipulation setting forth their respective arguments.

14                      **STANDARDS OF REVIEW**

15      The court must sustain the findings of the Commissioner unless:

16  (a) they are not supported by substantial evidence in the record as a

17  whole; or (b) the Commissioner applied an improper legal standard.

18  See 42 U.S.C. 405(g); Gordon v. Secretary of Health and Human

19  Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence

20  means "more than a mere scintilla" but less than a preponderance.

21  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

22  L.Ed.2d 842 (1971); Desrosiers v. Secretary of Health and Human

23  Services, 846 F.2d 573, 576 (9th Cir. 1988).  "Substantial evidence"

24  is evidence a "reasonable mind might accept as adequate to support a

25  conclusion."  Richardson v. Perales, 402 U.S. at 402; Gordon v.

26  Secretary of Health and Human Services, 803 F.2d at 1072.

27      This court must review the record as a whole and consider adverse

28  as well as supporting evidence.  See Green v. Heckler, 803 F.2d 528,

1  529-30 (9th Cir. 1986).  Where evidence is susceptible of more than

2  one rational interpretation, the court must sustain the Commissioner's

3  decision.  <u>See</u> <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1453 (9th Cir.

4  1984).

5                  **THE FIVE-STEP SEQUENTIAL EVALUATION**

6       The Commissioner has established a five-step sequential

7  evaluation for determining whether a person is disabled.  First, the

8  Commissioner determines whether the person is engaged in "substantial

9  gainful activity."  If so, the Commissioner denies disability

10  benefits.  Second, if the person is not so engaged, the Commissioner

11  determines whether the person has a medically severe impairment or

12  combination of impairments.  If the person does not have a severe

13  impairment or combination of impairments, the Commissioner denies

14  benefits.  Third, if the person has a severe impairment, the

15  Commissioner determines whether the impairment meets or equals one of

16  a number of "listed impairments."  If the impairment meets or equals a

17  "listed impairment," the Commissioner conclusively presumes that the

18  person is disabled.  Fourth, if the impairment does not meet or equal

19  the "listed impairments," the Commissioner determines whether the

20  impairment prevents the person from performing past relevant work.  If

21  the person can perform past relevant work, the Commissioner denies

22  benefits.  Fifth, if the person cannot perform past relevant work, the

23  burden shifts to the Commissioner to show that the person is able to

24  perform other kinds of work.  The person is entitled to disability

25  benefits only if he or she is unable to perform other work.  See 20

26  C.F.R. § 404.1520 and 20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S.

27  137, 140-42, 107 S.Ct. 2287, 96 L.Ed 119 (1987).

28  ///

**FINDINGS OF THE ALJ**

The plaintiff was born August 7, 1971. [AR 105.] The plaintiff has an eleventh grade education. [AR 17, 41, 116.] The plaintiff's past relevant work includes employment as a carpet installation helper, fast food worker, and book binder assistant. [AR 17, 111, 138.] The plaintiff alleges that he has been unable to work since May 24, 2000,[1] because of seizures. The plaintiff also complained of memory problems and periodic light headedness. [AR 110.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date. [AR 22.] The ALJ found that the plaintiff had a seizure disorder, acromioclavicular separation of the left shoulder, and an organic mental disorder which was "severe." [AR 18, 22.] However, the plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4. [AR 22.]

The ALJ further found that the plaintiff's allegations regarding his limitations were not totally credible. The ALJ determined that the plaintiff retained the residual functional capacity to perform work involving lifting and carrying fifty pounds occasionally and twenty-five pounds frequently with his left arm. The plaintiff was unlimited with regard to his right non-dominant arm. The plaintiff further should avoid working above shoulder height with his left arm. The plaintiff should not work at unprotected heights or around moving

---

[1] The ALJ indicated in his decision that the plaintiff amended his onset date at the time of the hearing. [AR 16.] This may have occurred off the record prior to the hearing. The onset date alleged in the application was May 25, 1999. [AR 105, 110.] There is no record of an amendment of the onset date in the transcript itself. In any case, SSI entitlement cannot begin before the first month after the filing of the application. 20 C.F.R. 416.335.

1  machinery and moving automotive equipment.  He should avoid climbing
2  ladders and scaffolds.  The ALJ found that the plaintiff suffered
3  slight pain in his shoulders and slight dizziness.  The ALJ further
4  found that the plaintiff's organic disorder was moderate, limiting him
5  to minimum public contact.  However, the plaintiff was able to perform
6  simple, routine unskilled work.

7  The ALJ determined that the plaintiff's past relevant work as a
8  carpet installation helper, fast food worker, or book binder assistant
9  did not require the performance of work-related activities precluded
10  by the plaintiff's residual functional capacity.

11  The ALJ also found that, considering the plaintiff's age,
12  education, vocational background, and his residual functional capacity
13  for a significant range of medium work, and using Medical-Vocational
14  Rule 203.25 as a framework for decision-making, there were a
15  significant number of jobs in the national economy which the plaintiff
16  could perform such as that of a cleaner, packager, and kitchen helper.
17  The ALJ, therefore, concluded that the plaintiff was not under a
18  "disability" as defined in the Act at any time through the date of his
19  decision.  [AR 22-23.]

20                      **THE PLAINTIFF'S CONTENTIONS**

21  The plaintiff contends that substantial evidence does not support
22  the ALJ's step four determination that the plaintiff could return to
23  his past relevant work because the hypothetical question posed to the
24  vocational expert, upon which the determination was based, did not
25  include the limitation to work that involved minimal public contact.

26  The plaintiff further argues that the ALJ's residual functional
27  capacity assessment is not based upon substantial evidence.
28  ///

**DISCUSSION**

**The ALJ's step four determination**

The plaintiff's first contention is that even with the residual functional capacity as found by the ALJ, the ALJ erred in his step four evaluation because the hypothetical question posed to the vocational expert did not include the limitation to minimum public contact. "Therefore, the record contains no evidence as to whether Gray's past jobs of fast food worker at McDonald's, bookbinder, and carpet layer involved minimal public contact." [Joint Stipulation at 8.] Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record").

However, the ALJ's failure to include this limitation in his hypothetical question to the vocational expert was harmless error [Booz v. Secretary of Health and Human Services, 734 F. 2d 1378, 1380 (9th Cir. 1984)] because "past relevant work" can refer either to the "actual functional demands and job duties of a particular past relevant job," or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001), citing SSR 82-61. The actual functional demands of the plaintiff's particular past relevant jobs can be determined from two sources of information: "a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41." Id. Nothing in the forms the plaintiff completed as part of the application process [AR 111, 138] or his testimony indicates that the plaintiff had more than minimal contact with the public, except when he started at McDonald's

1  [AR 41-46].  However, he was later moved to the back to prepare food.

2  [AR 46.]

3      Moreover, the ALJ also made an alternative step five finding

4  that, even if the plaintiff could not perform any of his past relevant

5  work, the plaintiff could perform other jobs in the national economy.

6  [AR 20.]  The plaintiff concedes that substantial evidence would

7  support the ALJ's step five finding with respect to the three jobs

8  cited by the ALJ <u>if</u> the ALJ's residual functional capacity assessment

9  were based upon substantial evidence.  [Joint Stipulation at 8, n.3.]

10 **<u>The ALJ's assessment of the plaintiff's mental residual functional</u>**

11 **<u>capacity</u>**

12     Although the plaintiff's next argument is that the ALJ erred in

13 his step five assessment, the plaintiff's real argument is that the

14 ALJ's residual functional capacity assessment is not based upon

15 substantial evidence.  The plaintiff does not assign any error to the

16 ALJ's residual functional capacity assessment as it relates to the

17 plaintiff's physical problems.  [Joint Stipulation at 2.]  The

18 plaintiff's arguments all focus upon the plaintiff's mental

19 impairment.

20     The plaintiff contends, <u>inter</u> <u>alia</u>, that the ALJ's assessment of

21 residual functional capacity is not based upon substantial evidence

22 because the opinions of both Dr. William Cable, the medical expert

23 called to testify at the hearing, and Dr. Brian S. Taylor, the State

24 agency psychiatrist, assessed limitations greater than those found by

25 the ALJ.  The plaintiff argues that the ALJ failed to explain why he

26 chose not to include the restrictions as outlined by Dr. Taylor in his

27 residual functional capacity assessment contrary to SSR 96-6p which

28 requires that the ALJ consider and evaluate the residual functional

1  capacity assessments of the State agency consultants.  [Joint
2  Stipulation at 13.]

3      At the outset, however, it should be borne in mind that it is the
4  ALJ, not any expert, who is responsible for assessing residual
5  functional capacity at the hearing level. 20 C.F.R. § 416.946(c); <u>see</u>
6  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001); <u>Sample v.</u>
7  <u>Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  However, in making this
8  assessment, the ALJ must consider all relevant evidence, including
9  "any statements about what [the individual] can still do that have
10  been provided by medical sources . . ." [20 C.F.R. § 416.945(a)(3).]
11  In evaluating such opinions by medical sources, however, where there
12  is no treating physician, the opinion of an examining physician is
13  generally entitled to greater weight than the opinion of a physician
14  who never examined the plaintiff but who rendered his opinion solely
15  by reviewing the medical evidence.  20 C.F.R. § 416.927(d); <u>Andrews</u>,
16  53 F.3d at 1041.  Moreover, the opinion of a nonexamining physician,
17  without more, cannot constitute substantial evidence.  <u>Id.</u>, at 1042.
18  To constitute substantial evidence, the opinion of a nonexamining
19  physician must be consistent with independent clinical findings or
20  other evidence in the record.  <u>Thomas</u>, 278 F.3d at 957.

21      This being said, however, the court finds persuasive the
22  plaintiff's argument that the ALJ's mental residual functional
23  capacity assessment is not based upon substantial evidence.

24      The ALJ found that from a mental impairment perspective, the
25  plaintiff retained the residual functional capacity to perform
26  "simple, routine unskilled work" with minimum public contact.  [AR
27  20.]  In arriving at this conclusion, the ALJ relied upon the opinion
28  of Margaret A. Donohue, Ph.D., who performed a consultative

psychological examination, which included psychological testing, on October 3, 2000.  Dr. Donohue diagnosed organic mental disorder not otherwise specified with problems with auditory immediate memory.  She concluded that the plaintiff "does not really remember what is being said to him, confabulates information, and shows substantial problems with general memory impairment.  Because he shows signs of confabulation and is irritable, he may have problems relating adequately with others.  He does not have any difficulty with simple immediate tasks or simple instructions.  He may have some difficulty getting along adequately with others; he may be quite hostile, potentially combative, and irritable."  [AR 173.]

The ALJ summarized Dr. Donohue's report as indicating that "while interacting appropriately with other individuals may be problematic, the claimant was still capable of performing simple tasks," and the ALJ determined that "[t]here is no contrary medical opinion in the record, from either a physical or mental standpoint."  [AR 20.]

In this connection, the State agency psychiatrist, Dr. Taylor, also concluded that the plaintiff "would work best in a supportive environment doing a simple, repetitive task with little public/peer contact."  [AR 184.]  Dr. Cable likewise agreed that the plaintiff "could understand and remember short or simple instructions."  [AR 61.]

Thus, the ALJ apparently believed that Dr. Donohue's conclusion was uncontradicted and that his own residual functional capacity assessment was likewise uncontradicted and consistent with the record.

However, the fact that the plaintiff might be capable of understanding, remembering and following simple instructions and performing simple tasks does not necessarily lead to a conclusion that

the plaintiff can perform simple, repetitive unskilled work.  This is so because the residual functional capacity assessment takes into account the plaintiff's ability or inability to perform numerous other work functions other than just his ability to perform simple tasks. [See AR 182-83.]  20 C.F.R. § 416.945(c); see also 20 C.F.R. § 416.921(b).

There is nothing in Dr. Donohue's report that specifically addresses these other work functions.  However, Dr. Taylor, relying primarily upon Dr. Donohue's report and findings [AR 187], completed a form entitled "Mental Residual Functional Capacity Assessment" for that purpose [AR 182-85].  Dr. Taylor concluded that the plaintiff had moderate to marked limitation in his ability to understand and remember detailed instructions and carry out detailed instructions. Additionally, Dr. Taylor assessed that the plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.  [AR 182-83.]  Dr. Taylor also found that the plaintiff would have "not significantly limited" to moderate, closer to moderate, limitation in his ability to sustain an ordinary routine without special supervision and to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods. [AR 182-83.] The plaintiff also had "not significantly limited" to moderate, closer to "not significantly limited," restriction in his ability to ask simple questions or request assistance; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. [AR 183.] (This mental residual functional capacity assessment is referred to in the transcript as Exhibit 6F1 and 6F2.)

The ALJ, however, ignored Dr. Taylor's more detailed mental residual functional capacity assessment and Dr. Cable's testimony. Dr. Cable indicated his agreement with Dr. Taylor's assessment, stating that he "gave weight" to Exhibits 6F1[2] and 7F11. Dr. Cable also indicated that Dr. Taylor's assessments were consistent with the report of Dr. Donohue. [AR 61, 62, 63.]

However, Dr. Donohue herself did not indicate such restrictions. Ordinarily, because she is the only physician who had actually seen and examined the plaintiff, her opinion would be entitled to greater weight than that of Dr. Taylor or Dr. Cable who had not. Andrews, 53 F.3d at 1040-41.

The question then is whether Dr. Donohue's failure to recite specific limitations in other work functions such as using judgment, for example, or withstanding work pressures leads to a reasonable inference that no such limitations existed. Sample, 694 F.2d at 642

---

[2] Dr. Cable, however, did not indicate whether he also gave weight to 6F2-3, the remaining pages of Dr. Taylor's residual functional capacity assessment, or, if he did not, the reason. However, Dr. Cable's reference solely to Exhibit 6F1 rather than the entirety of Exhibit 6F appears to be merely an oversight rather than a reasoned disagreement with the remainder of Dr. Taylor's assessment as found at 6F2.

("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence").  In this case, the only inference that can be drawn is that Dr. Donohue was not asked to provide a detailed medical source statement.

This is clear, for example, when Dr. Donohue's examination revealed that the plaintiff's "insight and judgment are grossly impaired."  As an example, Dr. Donohue noted that the plaintiff made plans to be dropped off at the examination by a friend, but "he has no reasonable means of transportation back home."  [AR 171.] Nevertheless, Dr. Donohue did not indicate any limitations in using judgment or in the plaintiff's ability to make simple work-related decision, ask simple questions or request assistance, set realistic goals or make plans independently of others, or travel in unfamiliar places or use public transportation.

Dr. Donohue also noted that in taking the Trail Making Test Part B, the plaintiff stopped work due to frustration and had to be coached through the remainder of the task.  Nevertheless, the plaintiff made several errors and ranked in the 10th percentile.  However, Dr. Donohue's brief assessment did not account for this seemingly low frustration tolerance, nor did Dr. Donohue specifically address whether this reflected some impairment in the plaintiff's ability to maintain concentration, for example, or to perform activities within a schedule, sustain ordinary routine without special supervision, or respond appropriately to changes in a work setting.

This is not to imply that an ALJ's overall finding that a claimant is limited to simple tasks and simple routine work cannot by itself be an adequate residual functional capacity assessment.  It certainly might be, for example, if the degree of impairment in other

areas of work function were non-existent or not significant, or if there is a moderate degree of impairment in one or two isolated work-functions.  However, where, as here, there may be limitations in multiple areas of work-function which are greater than mild, to make a determination that the plaintiff is capable of substantial gainful activity because he can perform simple tasks without consideration of his impairment in the other areas of work functions is to make a decision not based upon substantial evidence.  This is quite clear from the vocational expert's testimony.

The vocational expert testified that if the plaintiff had the restrictions outlined by the ALJ in his hypothetical question– namely that the plaintiff had the physical limitations found by the ALJ and mild limitations in his activities of daily living, moderate difficulties in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence or pace with one or two episodes of decompensation[3] and a limitation to simple instructions--the plaintiff could perform his past relevant work and other work as a cleaner, bagger and kitchen helper.  [AR 67-70.]  Upon examination by the plaintiff's counsel, the vocational expert testified that if the plaintiff was moderately limited in his ability to perform activities within a schedule and maintain regular attendance and be punctual within customary tolerances, the plaintiff would still not be precluded from performing work as a cleaner, "if that was the only attribute that was defective."  (Emphasis added.)

---

[3] Technically, these assessments are not part of the residual functional capacity assessment.  20 C.F.R. § 416.920a.  Maier v. Commissioner of the Social Security Administration, 154 F.3d 913, 915 (9th Cir. 1998).

- 13 -

1  [AR 71; see AR 182.]   The plaintiff's counsel further inquired:

2      ATTY:      If they were, if you add to that, the person is

3                     not able to interact appropriately with, or

4                     moderately limited in the ability to interact

5                     appropriately with the general public and the

6                     ability to accept instructions.   (See AR 183.)

7      VE:        The general public would not be involved in a

8                     CLEANER position.   Accepting instructions would,

9                     would start to become added to [phonetic].

10     ATTY:      So if they were moderately limited in the ability

11                    to accept instructions, and respond appropriately

12                    to criticism from supervisors would that preclude

13                    the CLEANER job?

14     VE:        I don't know if it would preclude it, but it would

15                    certainly diminish the numbers.

16     ATTY:      And would the CLEANER job require any adaptation

17                    if the person was moderately limited in the

18                    ability to respond appropriately to changes in the

19                    work setting?   (See AR 183.)

20     VE:        I wouldn't think so, no, it's a repetitive

21                    position.

22     ATTY:      Pardon?

23     VE:        It's a repetitive position, the same work is done

24                    over and over, day in and day out.   Not too many

25                    surprises.

26 ///

27 ///

28 ///

| | |
|---|---|
| ATTY: | OK.  And if they were moderately limited[4] in their ability to complete a normal workday without interruptions and limited in the ability to perform at a consistent pace without an unreasonable number and length of rest periods? (<u>Id.</u>) |
| VE: | This is all in addition to the other? |
| ATTY: | If you added all that together, that's Exhibit 6F2. |
| VE: | In my opinion those would preclude work if you added those up together. [AR 71-72.] |

Despite this testimony, the ALJ completely failed to address Dr. Taylor's and Dr. Cable's opinions concerning the plaintiff's residual functional capacity, finding instead that Dr. Donohue's statement that the plaintiff could perform simple tasks was an adequate medical source statement, that it was uncontradicted, and that it supported his own residual functional capacity assessment.

Although the opinion of a nonexamining physician such as Dr. Taylor and Dr. Cable, is lowest in the hierarchy of medical opinion, the ALJ must, nevertheless, always "explain why 'significant probative evidence has been rejected.'" <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984), <u>quoting</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706 (3d Cir. 1981).  Clearly, Dr. Taylor's actual residual functional capacity assessment is significant and probative according to the testimony of both Dr. Cable and the

---

[4] Dr. Taylor, however, indicated that the plaintiff's impairment in this regard was "not significantly limited" to moderately limited, closer to moderately limited.  [AR 183.]

vocational expert, and it was consistent with the report of Dr. Donohue.  Although the ALJ did not explicitly reject Dr. Taylor's assessment, by failing to address the implications of Dr. Taylor's responses in the Mental Residual Functional Capacity Assessment form, the ALJ implicitly rejected the assessment without providing an explanation.  In so doing, the ALJ also violated 20 C.F.R. § 416.927(f)(2) which not only requires that the ALJ "consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . ." but that "the administrative law judge <u>must explain in the decision</u> the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources. . . ."  (Emphasis added.) The ALJ provided no such explanation other than to say that the record did not contradict Dr. Donahue's assessment.  However, this rationale addressed only a small part of Dr. Taylor's (and Dr. Cable's) assessment.

    Accordingly, the matter requires remand for a reassessment of the plaintiff's mental residual functional capacity.  If the ALJ does not agree with the mental residual functional capacity assessment as found by Dr. Taylor and apparently as found by Dr. Cable, the ALJ must explain the reason in accordance with <u>Vincent</u>, 20 C.F.R. § 416.927(f) and SSR 96-6p.

    Inasmuch as the ALJ's mental residual functional capacity is not based upon substantial evidence, the plaintiff's ability to perform his past relevant work will also require re-evaluation.  If the plaintiff is determined not to be able to perform his past relevant

- 16 -

1    work, the step five determination that the plaintiff can perform other

2    jobs will also have to be reevaluated in accordance with the

3    reassessed mental residual functional capacity.  A vocational expert

4    should again be called.

5                           **ORDER OF REMAND**

6         The Court has reviewed the pleadings, Joint Stipulation of the

7    parties, and the transcript of the record.  In accordance with the

8    foregoing discussion, the magistrate judge finds that good cause has

9    been shown for remanding the case to the Commissioner.

10        IT IS ORDERED that this case be remanded to the Commissioner of

11   the Social Security Administration pursuant to sentence four of 42

12   U.S.C. section 405(g) for further administrative proceedings

13   consistent with the reasons set forth herein.

14

15   Dated: August 30, 2005

16

17                              _____/s/_____
                                JAMES W. McMAHON
18                              United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28